Citation Nr: 1806345 
Decision Date: 01/18/18 Archive Date: 02/07/18

DOCKET NO. 07-24 513 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUES

1. Entitlement to service connection for a chronic acquired psychiatric disability, to include post-traumatic stress disorder (PTSD).

2. Entitlement to service connection for a skin disorder, chronic fatigue syndrome, headaches, gastrointestinal disability, and muscle spasm, to include as qualifying chronic disabilities under the provisions of 38 C.F.R.§ 3.317.

3. Entitlement to a total rating based on individual unemployability due to the severity of service-connected disability (TDIU).


REPRESENTATION

Veteran represented by: Rick Little




ATTORNEY FOR THE BOARD

M. Harrigan Smith, Counsel


INTRODUCTION

The Veteran had active service from May 1989 to May 1992.

In a June 2009 decision, the Board of Veterans' Appeals (Board) denied entitlement to service connection for PTSD, as well as entitlement to service connection for undiagnosed illnesses from Gulf War syndrome with symptoms of skin disability, fatigue, headaches, gastrointestinal disability, and muscle spasm. The Board also denied entitlement to a TDIU. 

The Veteran and his representative appealed the decision to the United States Court of Appeals for Veterans Claims (Court). In February 2010, the Veteran's agent and VA filed a Joint Motion for Remand (JMR) of the Board's decision for adjudication. The Court granted the JMR the same month and remanded the case to the Board for compliance with its instructions. 

In August 2010, February 2011, and January 2014, the Board remanded the case for further development. The case has been returned to the Board for appellate review.

In September 2017, the Board requested an opinion from a Veterans Health Administration (VHA) medical expert addressing medical questions critical to this appeal. The requested VHA opinion was received in November 2017.

The issue(s) of entitlement to TDIU is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).




FINDINGS OF FACT

1. PTSD is related to active duty service.

2. The competent medical evidence of record does not show that the Veteran has a chronic skin disorder, chronic fatigue syndrome, headaches, gastrointestinal disability, or muscle spasm related to service. 


CONCLUSIONS OF LAW

1. The criteria are met to establish service connection for PTSD. 38 U.S.C. §§ 1110, 5103, 5103A, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304(f), 4.125 (2017).

2. The criteria are not met to establish service connection for a skin disorder, chronic fatigue syndrome, headaches, gastrointestinal disability, and muscle spasm, to include as qualifying chronic disabilities under the provisions of 38 C.F.R.§ 3.317. 38 U.S.C. §§ 1110, 5103, 5103A, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.317 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I.a. Service Connection Claims - Legal Criteria

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a).

Establishing service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed.Cir.1996) (table); Hickson v. West, 12 Vet. App. 247, 253 (1999); 38 C.F.R. § 3.303.

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107 (West 2002); see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

I.b.1. PTSD - Legal Criteria

There is specific VA criteria to establish service connection for PTSD: (1) medical evidence diagnosing PTSD; (2) credible supporting evidence that the claimed in-service stressor actually occurred; and (3) medical evidence of a link between current symptomatology and the claimed in-service stressor. 38 C.F.R. § 3.304(f).
Under current VA regulations, if a stressor claimed by a Veteran is related to the Veteran's fear of hostile military or terrorist activity and a VA psychiatrist or psychologist confirms that the claimed stressor is adequate to support a diagnosis of PTSD, and that the Veteran's symptoms are related to the claimed stressor, provided the claimed stressor is consistent with the places, types, and circumstances of the Veteran's service, the Veteran's lay testimony alone may establish the occurrence of the claimed in-service stressor. 38 C.F.R. § 3.304(f)(3). "Fear of hostile military or terrorist activity" means that a Veteran experienced, witnessed, or was confronted with an event or circumstance that involved actual or threatened death or serious injury, or a threat to the physical integrity of the Veteran or others, such as from an actual or potential improvised explosive device; vehicle-imbedded explosive device; incoming artillery, rocket, or mortar fire; grenade; small arms fire, including suspected sniper fire; or attack upon friendly military aircraft, and the Veteran's response to the event or circumstance involved a psychological or psycho-physiological state of fear, helplessness, or horror. Id.


I.b.2. PTSD - Background and Analysis

The Veteran contends that he has an acquired psychiatric disorder, to include PTSD, as a result of stressful events that occurred during his military service in the Persian Gulf. The Veteran has contended that his unit performed different operations, including to raid places in Kuwait and islands right off the coast of Kuwait, that were already heavily bombed. Their task was to sweep out the remaining Iraqi resistance and to secure the area. He reported that the Iraqis did not put up much of a fight, and that they took many Iraqi prisoners of war. He noted that they killed their own wounded and sick and that there were many dead bodies. The Veteran's service personnel records confirm that he was a U.S. Marine and served in Kuwait as a machine gunner during Desert Storm.

A February 2003 medical record reflects an individual therapy session where the examiner noted that the Veteran was a former U.S. Marine and served in Desert Storm. He noted that the Veteran reported that he continued to have nightmares and flashbacks that have consisted of fighting in a war or images from war. The examiner found that the Veteran appeared to display some PTSD symptoms from his experiences from war. The examiner did not give any diagnosis.

A March 2014 private psychiatric report that has been translated reflects that the examiner did not provide a diagnosis, but it was noted that in 1991 the Veteran was called to the Persian Gulf War and reported that on his return he began to have problems with impulse control, aggressiveness, recurrent nightmares, insomnia, and flashbacks as well as emotional instability. The Veteran's representative pointed out that the examiner also found that the Veteran presented an adequate contact with reality although he had marked paranoid ideas due to his experiences lived at war.

VA medical records reflecting treatment from July to October 2017 show that the Veteran underwent treatment for PTSD with nightmares and flashbacks involving combat experiences in Iraq in the early 1990s. In 2016, the Veteran expressed a lack of willingness to report for another examination. Accordingly, in order to provide the Veteran with every opportunity to substantiate his claim, the Board requested a VHA specialist review the claims file and address whether or not the Veteran met the criteria for a diagnosis of PTSD.

In November 2017, a VHA psychiatrist reviewed the February 2003 and March 2014 records and opined that these records did not reflect that the Veteran met the DSM-IV criteria for PTSD only because the clinician was not well-versed in the DSM-IV criteria. The November 2017 VHA psychiatrist concluded that if the Veteran had an examination with an experienced clinician there was at least a 50 percent probability that he would meet the criteria for a diagnosis of PTSD.

After resolving any reasonable benefit of doubt in favor of the Veteran, the Board finds the evidence addressing the question of whether the Veteran meets the criteria for a diagnosis of PTSD based on his military service is at least in equipoise. Consequently, entitlement to service connection for PTSD is warranted. 

I.c.1. Skin Condition, Fatigue, Headaches, Gastrointestinal Disease, and Muscle Spasm Due to an Undiagnosed Illness - Legal Criteria

The Veteran asserts that he has a chronic disability manifested by skin condition, fatigue, headaches, gastrointestinal disease, and muscle spasm due to an undiagnosed illness. 

Subject to various conditions, service connection may be granted for a disability due to undiagnosed illness of a Veteran who served in the Southwest Asia Theater of Operations during the Persian Gulf War. Among the requirements are that there are objective indications of a chronic disability resulting from an illness or combination of illnesses manifested by one or more signs or symptoms such as fatigue, signs or symptoms involving the skin, headache, muscle pain, joint pain, neurological signs or symptoms, neuropsychological signs or symptoms, signs or symptoms involving the respiratory system (upper and lower), sleep disturbances, gastrointestinal signs or symptoms, cardiovascular signs or symptoms, abnormal weight loss, and menstrual disorders. The illness must become manifest during either active service in the Southwest Asia theater of Operations during the Persian Gulf War or to a degree of 10 percent or more, under the appropriate diagnostic code of 38 C.F.R. Part 4, not later than December 31, 2021.

The presumption is applicable if, by history, physical examination, and laboratory tests, the disability cannot be attributed to any known clinical diagnosis. There must be objective signs that are perceptible to an examining physician and other non-medical indicators that are capable of independent verification. There must be a minimum of a six-month period of chronicity. There must be no affirmative evidence that relates the undiagnosed illness to a cause other than being in the Southwest Asia Theater of Operations during the Persian Gulf War. 38 U.S.C. § 1117; 38 C.F.R. § 3.317. If signs or symptoms have been medically attributed to a diagnosed (rather than undiagnosed) illness, the Persian Gulf War presumption of service connection does not apply. VAOPGCPREC 8- 98 (Aug. 3, 1998) (cited at 63 Fed. Reg. 56,703 (Oct. 22, 1998).

For purposes of this section, a qualifying chronic disability means a chronic disability resulting from any of the following (or any combination of the following): (A) an undiagnosed illness; (B) the following medically unexplained chronic multisymptom illnesses that are defined by a cluster of signs or symptoms: (1) chronic fatigue syndrome; (2) fibromyalgia; (3) irritable bowel syndrome; or (4) any other illness that the Secretary determines meets the criteria in paragraph (a)(2)(ii) of this section for a medically unexplained chronic multisymptom illness; or (C) any diagnosed illness that the Secretary determines in regulations prescribed under 38 U.S.C.A § 1117(d) warrants a presumption of service-connection. 38 C.F.R. § 3.317(a)(2)(i). For purposes of this section, the term medically unexplained chronic multisymptom illness means a diagnosed illness without conclusive pathophysiology or etiology, that is characterized by overlapping symptoms and signs and has features such as fatigue, pain, disability out of proportion to physical findings, and inconsistent demonstration of laboratory abnormalities. Chronic multisymptom illnesses of partially understood etiology and pathophysiology will not be considered medically unexplained. 38 C.F.R. § 3.317(a)(2)(ii). For purposes of this section, "objective indications of chronic disability" include both "signs," in the medical sense of objective evidence perceptible to an examining physician, and other, non-medical indicators that are capable of independent verification. 38 C.F.R. § 3.317(a)(3). See also Goodman v.
Shulkin, 870 F.3d 1383 (Fed. Cir. September 18, 2017).

I.c.2. Undiagnosed Illness - Background and Analysis

The Veteran's service records show that he is a Persian Gulf Veteran pursuant to 38 C F R § 3.317(d).

Service treatment records include a May 1992 separation Report of Medical Examination reflects a normal clinical evaluation. His separation May 1992 Report of Medical History reflects that the Veteran checked the "no" boxes for frequent or severe headache, skin diseases, and stomach, liver, or intestinal trouble. There are no service treatment records related to skin condition, fatigue, headaches, gastrointestinal disease, or muscle spasm.

VA medical records reflecting treatment from July to October 2017 do not show any complaints of or treatment for fatigue, a gastrointestinal disability, or muscle spasm. The Veteran did report headaches on less than five occasions during this time; however, this does not rise to the level of disability to be considered chronic under the pertinent regulation. As such, the Board finds that the medical evidence of record does not demonstrate current objective indications of chronic fatigue, headaches, gastrointestinal disease, or muscle spasm. 

With regard to the claimed skin disorder, VA medical records reflect that the Veteran was seen in July and September 2017 for a rash. In July 2017, the Veteran reported chronic itching and various lesions that appeared and disappeared. In September 2017, the Veteran reported that he had symptoms of "some kind of rash for years" that had worsened over the prior two months. The symptoms were itching, most significantly on his back. He reported treating it with hydroxyzine and clotrimazole fungal cream with minimal relief. The Veteran had a flat reddened rash on his back and reported that it also appeared on his abdomen and chest. 

The Board acknowledges that the Veteran has been treated for a skin rash over the appeals period. However, the evidence of record does not establish that this skin rash meets the criteria for a chronic disorder under the regulations governing claims for undiagnosed illnesses based on service in SWA. While the Veteran reported that he had this rash for years, without a proper interview with an examiner and a skin examination, it cannot be determined that meets the criteria for an undiagnosed disorder. The Board notes that in 2016 the Veteran refused to report for a VA examination. When a Veteran has been notified of an examination, and fails to report for an examination scheduled in conjunction with an original compensation claim, the claim shall be rated based on the evidence of record. 38 C.F.R. § 3.655 (2017). As such, this claim must be denied, as the evidence in the record does not support a grant of service connection. 

Accordingly, service connection according to 38 C F R § 3.317 or undiagnosed illness from Gulf War syndrome with symptoms of a skin disorder, fatigue, headaches, gastrointestinal disease, and muscle spasm is not warranted, and the claim is denied.

Based on the record, there is no current diagnosis related to a skin condition fatigue, headaches, gastrointestinal disease, or muscle spasm. As such, in the absence of proof of a present disability, there can be no valid claim of service connection under 38 C.F.R. § 3.303. See Brammer, supra. As there is no evidence of a current disability, it is unnecessary for the Board to reach the question of etiology of any illness from Gulf War syndrome with symptoms of skin condition, fatigue, headaches, gastrointestinal disease, and muscle spasm.

The Board has also considered the Veteran's statements concerning whether he suffers from an undiagnosed illness manifested by a skin condition, fatigue, headaches, gastrointestinal disease, and muscle spasm. However, it finds that the
Veteran is not competent to state that he suffers from such an illness and that it is related to service, as this is beyond the competence of a layperson. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). The Board finds that the question of whether the Veteran has such an undiagnosed illness is far too complex a medical question to lend itself to the opinion of a layperson. 

As such, the Board finds that service connection is not warranted for skin disorder, chronic fatigue syndrome, headaches, gastrointestinal disability, and muscle spasm, to include as qualifying chronic disabilities under the provisions of 38 C.F.R. § 3.317. As the preponderance of evidence is against the claim, the benefit of the doubt doctrine is not for application.


ORDER

Service connection for PTSD is granted.

Service connection for a skin disorder, chronic fatigue syndrome, headaches, gastrointestinal disability, and muscle spasm, to include as qualifying chronic disabilities under the provisions of 38 C.F.R.§ 3.317 is denied.


REMAND

As the Board has granted service connection for PTSD, which has yet to be rated, the TDIU issue must be deferred on remand for re-adjudication after the rating for PTSD has been established.

Accordingly, the case is REMANDED for the following action:

After the disability rating for PTSD has been assigned, readjudicate the claim for entitlement to TDIU. If any benefit on appeal remains denied, issue a supplemental statement of the case. Thereafter, the case should be returned to the Board, if in order.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (West 2014).



______________________________________________
M. HYLAND
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs